**Opinion issued May 14, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-24-00386-CV**

———————————

**IN THE MATTER OF J.H.M.**

---

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-00361J**

---

**MEMORANDUM OPINION**

Appellant, J.H.M., appeals the juvenile court's determinate sentencing judgment committing him to the Texas Juvenile Justice Department ("TJJD") for eight years and its dispositional order transferring him to the Texas Department of Criminal Justice ("TDCJ") to serve the remainder of his determinate sentence. In three issues, J.H.M. contends that the juvenile court erred in (1) failing to specify

in its judgment the reasons for his commitment to TJJD, as required by the Texas Family Code, (2) committing him to TJJD, and (3) transferring him from TJJD to TDCJ.

We affirm.

## Background

On April 20, 2022, J.H.M. and two other individuals chased down and murdered the complainant, Nicholas Alfred, as he ran to his motel room with his girlfriend. Following an investigation, police identified J.H.M. as one of the assailants.

On February 21, 2023, the State charged J.H.M. by petition with engaging in delinquent conduct by committing murder, alleging that J.H.M.

> unlawfully, intentionally, and knowingly cause[d] the death of [the complainant] by SHOOTING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY A FIREARM.

> unlawfully intend[ed] to cause serious bodily injury to [the complainant]. . . and did cause the death of the [c]omplainant by intentionally and knowingly committing an act clearly dangerous to human life, namely SHOOTING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY A FIREARM.

At the time of the offense, J.H.M. was sixteen years old. He turned seventeen years old one month and seven days after committing the offense. The State filed a determinate petition on April 21, 2023.

2

On March 5, 2024, the juvenile court held a hearing to receive a stipulation of evidence. After the court admonished him of his rights, J.H.M. pleaded true to the felony offense of murder and using or exhibiting a deadly weapon, namely a firearm, during the commission of the offense. The court admitted the written stipulation of evidence in which J.H.M. admitted the facts of the offense as alleged in the petition. The court then found that J.H.M. had engaged in delinquent conduct and was in need of rehabilitation, and it made an affirmative finding that J.H.M. used or exhibited a deadly weapon, a firearm, during the commission of the offense. The court reset the case for a disposition hearing.

## A.    Disposition Hearing

At the April 22, 2024 disposition hearing, the juvenile court admitted J.H.M.'s probation report into evidence which included four documents: (1) a court report information summary; (2) a juvenile probation department report prepared in March 2023 and updated in April, May, June, July, August, September, October and December 2023, and in February and March 2024; (3) a Positive Achievement Change Tool pre-screen response report completed in April 2024; and (4) a Sentinel Individual Violations Report from March 5, 2024 through April 12, 2024.

Houston Police Department Detective K. Persad testified about the investigation of the complainant's murder. Based on a surveillance videotaped recording from the motel and Chic's Cabaret, a nearby establishment where the

complainant's girlfriend worked, as well as their interview with the complainant's girlfriend, Detective Persad explained that police determined that three individuals had approached and shot the complainant as he arrived at his motel room. The three individuals then fled the scene. Officers identified Karl Kelly as one of the assailants. During his interview with police, Kelly gave officers the nicknames of the other two individuals involved in the shooting. Detective Persad testified that police later identified J.H.M. as one of the assailants. In the course of his investigation, Detective Persad learned that Kelly had a violent history with the complainant, but J.H.M. had no history with him.

Detective Persad further testified that approximately thirty fired cartridge casings and fragments were found at the crime scene. Some of the casings were later linked to casings collected in another case a month later. Detective Persad was also able to review the body camera footage in the latter case. He testified that J.H.M. appeared in that footage and matched the description of the person seen in the motel surveillance videotaped recording. Detective Persad noted that the person seen in both videotaped recordings had a tattoo of an "M" on his right hand and a "C" on his left hand. After obtaining J.H.M.'s address, police discovered that J.H.M. was a member of the "Crips," a criminal street gang. The surveillance videotaped recording from Chic's Cabaret and a compilation of videotaped recordings from the motel's surveillance cameras were admitted into evidence.

Harris County Juvenile Probation Officer W. Rector testified that she began supervising J.H.M. in January 2024. According to Rector, J.H.M. was placed in detention on January 12, 2023, and was released on May 4, 2023. During his detention, J.H.M. was written up once for failing to follow staff instructions.

Officer Rector testified that the conditions of J.H.M.'s release included twenty-four hour supervision and wearing a global positioning system ("GPS") ankle monitor. According to his probation report, Pre-Adjudication Team ("PAT") Officer P. Nunez reported that, on October 4, 2023, J.H.M. left the house and visited a local firearm shop with his uncle, who was not an approved guardian.[1] Rector testified that on November 27, 2023, Officer Nunez observed J.H.M. driving with his girlfriend before arriving home for his scheduled visit with Officer Nunez. Despite being admonished for his conduct, the report showed that J.H.M. continued violating his home placement order and was left unsupervised at home on five or six occasions.

Officer Rector further testified that when she began supervising J.H.M., he was working on passing the general educational development ("GED") tests, was attending counseling with Journey Through Life, and was placed into YESS, a program designed to supervise youth who are gang members. Rector testified that she had not had any issues with J.H.M. and that he was present at each of his home

---

[1] Other than his mother, J.H.M.'s maternal and paternal grandmothers were the only other two approved guardians.

visits. Rector testified that after J.H.M.'s family relocated to Galveston, Texas, she was not able to conduct home visits, but J.H.M. participated in every scheduled FaceTime call. Rector acknowledged that because she was unable to meet with J.H.M. in person, she could not be certain whether he was being supervised at all times or going out without an approved guardian.

On cross-examination, Officer Rector testified that J.H.M. had passed the math portion of the GED test. She also testified that J.H.M. consistently charged his GPS ankle monitor and that he had not been charged with any new law violation or offenses since she began supervising him.

Ishmael Pink was appointed as J.H.M.'s guardian ad litem in March 2023. Pink testified that J.H.M. had expressed remorse and told Pink that he "shouldn't [have] even be[en] there" and "shouldn't be around those people," but that he was "doing things right now." Pink believed that J.H.M. had learned from his mistakes, he was a good candidate for probation, and he would comply with the conditions imposed by the court should it grant probation.

On cross-examination, when asked if J.H.M. felt remorse for having been in that environment or because someone had died, Pink responded that he had not discussed the facts of the case with J.H.M., but he assumed that J.H.M was remorseful that someone had died. Pink testified that J.H.M.'s mother was not aware of J.H.M.'s whereabouts at all times, and she had left him unsupervised on

6

occasion. Although J.H.M. left the house with his uncle, who was not an approved guardian, Pink testified that he had spoken with J.H.M.'s uncle and that he was "on the same page" and wanted J.H.M. to do well. Pink was aware that J.H.M. was alleged to be a member of the Crips, but he believed that J.H.M. was no longer involved with the gang.

J.H.M.'s mother testified that she moved to Galveston with J.H.M. and his four siblings so that J.H.M. would no longer be exposed to negative influences. She testified that she was not working at the time of the hearing and was able to be at home with J.H.M. at all times. She testified that she was helping J.H.M. apply for jobs, but that his curfew made finding a job difficult because he was unable to work the hours required. She further testified that J.H.M. was doing well in therapy, and that if the court placed him on probation, she would ensure that he complied with all the conditions imposed by the court.

The juvenile court also admitted into evidence J.H.M.'s stipulation in which he acknowledged that he had engaged in the conduct alleged in the petition; the probation report which indicated that J.H.M. had violated the conditions of his home placement order and was left unsupervised at home on five or six occasions; and evidence related to the complainant's murder, including surveillance videotaped recordings showing the shooting, a still photograph from the surveillance videotaped recording showing J.H.M., photographs of the complainant

with his daughter and mother, and a newspaper clipping about the program started by the complainant's mother aimed at curbing gun violence.

On May 2, 2024, after considering the witness testimony, written reports, and arguments of counsel, the juvenile court assessed J.H.M.'s determinate sentence at eight years in TJJD. The court found that it was in J.H.M.'s best interest to be placed outside of the home, that efforts had been made to eliminate the need for removal, and that J.H.M. could not be provided adequate care in the home. The court noted J.H.M.'s age and that there was no testimony regarding alternatives and treatment options in the community or juvenile probation placements outside of the home that could provide therapeutic interventions. The court found that J.H.M. had committed acts clearly dangerous to human life when, during the commission of the offense, he discharged his firearm at the occupants of a vehicle that was leaving the scene. The juvenile court signed the Determinate Sentencing Judgment and Order of Commitment, which included a page entitled Exhibit B, and made the following affirmative findings:

- J.H.M. engaged in delinquent conduct "that does include the violation of one or more of the Penal Code provisions specified in section 53.045 of the Texas Family Code," which was identified as the offense of murder;

- J.H.M. was in need of rehabilitation;

- the allegations are supported by the evidence beyond a reasonable doubt;

- a deadly weapon, a firearm, was used;

8

- J.H.M. was 18 years old at the hearing;

- J.H.M. "is a child under the meaning of Title III of the Texas Family Code" and that "[d]isposition should be made for [J.H.M.'s] protection and for the protection of the public. Disposition is in the best interest of [J.H.M.]'s health, safety, morals, and education."

- "reasonable efforts were made to prevent or eliminate the need for [J.H.M.]'s removal from the home and to make it possible to return home";

- "[J.H.M.], in [his] home, cannot be provided the quality or care and level of support and supervision that [he] needs to meet the conditions of probation";

- "the best interest of the child and the community will be served by committing [J.H.M.] to the care, custody, and control of the [TJJD]";

- J.H.M. was committed to the care, custody, and control of TJJD for a term of 5/2/2024 through 5/1/2032 with a possible transfer to TDCJ;

- J.H.M. has been continuously detained since 1/12/2023 and has spent 112 days in detention;

- "[J.H.M.] and/or family was previously referred to the following community, court, or educational programs: SENTINEL - ELECTRONIC MONITORING; REVISION - MENTORSHIP PROGRAM SCREENING; MMH - MHMRA - FORENSIC SERVICES; HCJPD - THINKING FOR A CHANGE - 50 SOCIAL SKILLS - JJC; PSS - INDIVIDUAL COUNSELING"; and

- "[J.H.M.] used a [deadly weapon] during offense – no evidence of therapeutic alternatives to TJJD to meet the needs of [J.H.M.]. 18yo and no CTPO placements available."

On May 6, 2024, TJJD notified the juvenile court that J.H.M. was "18.11 years of age and subject to a transfer/release hearing under Sections 244.014 and

9

245.051, Human Resources Code, and Section 54.11, Family Code." TJJD requested that the court hold a transfer hearing as soon as possible.

## B.     Transfer Hearing

The juvenile court conducted a transfer hearing on May 23, 2024, approximately three weeks after the court imposed J.H.M.'s eight-year determinate sentence. During the hearing, the juvenile court admitted J.H.M's determinate sentence judgment and took judicial notice of its file.

Tami Coy oversees the sentence defender department at TJJD which processes all of the sentence defender youth from TJJD to TDCJ parole as well as transfers to TDCJ. Coy testified that J.H.M. was not physically transferred to TJJD due to the short time period between his commitment to TJJD and his nineteenth birthday. Coy testified that if J.H.M. had been transferred to TJJD and there had been enough time, he would have had programs available to him. For example, TJJD had a Capital and Serious Violent Offender Treatment Program, which is an intensive closed group program, and the Power Source Treatment Program, a similar but less intensive program. Coy testified that if J.H.M. had used drugs, he might have qualified for TJJD's substance abuse services. She testified that all of TJJD's programs are geared toward helping offenders who were involved with gangs, but she was not aware of any specific program for offenders who are gang members. Coy testified that typically when an offender is committed to TJJD and

he is eligible for transfer, she is able to make a recommendation regarding whether the sentence should be transferred. In this case, because J.H.M. was never transferred to TJJD, she was unable to make a recommendation.

Coy testified that TDCJ has programs both in the institutional division and for those on parole, but she was not familiar with the specific programs available at TDCJ. If J.H.M. were permitted to complete the remainder of his sentence on parole, Coy would recommend that he be placed on "super . . . intensive supervision" at TDCJ, which would be similar to house arrest; that he take anger management counseling; that he be gainfully employed; and that he participate in educational programming if he had not earned a high school diploma or obtained his GED. She testified that TDCJ does not have a program similar to TJJD's Capital and Serious Violent Offender Program, which lasts approximately six months and is very intensive. She testified that while the programming at TDCJ is different than the programming at TJJD, both address the same identified risks.

J.H.M.'s mother testified that she would be willing and able to help J.H.M. with his services if he were released on parole. She testified that she did not currently work so she would be able to supervise J.H.M.

On May 24, 2024, the court stated, "[h]aving had an opportunity to consider the evidence presented, written reports, testimony from witnesses, arguments of counsel as well as the statutory considerations, orders the transfer of the remainder

11

of the TJJD disposition to the custody of [TDCJ] for completion of [J.H.M.'s] sentence."  The juvenile court signed a Dispositional Order of Transfer to TDCJ on May 24, 2024, stating, in part:

- J.H.M. was found to have engaged in delinquent conduct, namely, <u>MURDER</u>, committed on April 20, 2022;

- a disposition hearing was held on May 2, 2024, and J.H.M. was committed to TJJD and sentenced to eight years' confinement;

- J.H.M. was born on May 27, 2005, and the transfer hearing was held prior to the sixtieth day after the date the court received the referral;

- J.H.M. was detained in the Harris County Juvenile Detention Center for 112 days;

- at the time of his transfer hearing, J.H.M. was in the custody of TJJD after being committed there May 2, 2024;

- J.H.M. "is still in need of rehabilitation and the welfare of the community requires the transfer";

- J.H.M. "displayed a deadly weapon to wit: firearm"; and

- it was in J.H.M.'s best interest and that of the public at large that he be transferred to TDCJ "in accordance with Section 54.11, Texas Family Code, to serve the remainder of his 8-year Determinate Sentence."

### Texas Family Code Section 54.04(f) Findings

In his first issue, J.H.M. argues that the juvenile court erred in failing to specify in its order its reasons for committing him to TJJD as required by Texas Family Code section 54.04(f).

## A. Applicable Law

The Texas Family Code requires the juvenile court to make certain findings when committing a child to TJJD. Section 54.04(c) provides, in relevant part: "No disposition may be made under this section unless the child is in need of rehabilitation or the protection of the public or the child requires that disposition be made." TEX. FAM. CODE ANN. § 54.04(c). Section 54.04(f) requires that "[t]he court shall state specifically in the order its reasons for the disposition[.]" *Id.* § 54.04(f).

Under section 54.04(i), if the juvenile court places a child on probation outside the child's home or commits the child to TJJD, the court:

(1) shall include in its order its determination that:

(A) it is in the child's best interests to be placed outside the child's home;

(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and

(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation[.]

*Id.* § 54.04(i).

Compliance with section 54.04(f)'s requirement to specifically state the reasons for the court's disposition is mandatory. *In re W.A.M.P.*, No. 14-21-00105-CV, 2022 WL 2976876, at *3 (Tex. App.—Houston [14th Dist.] July 28,

13

2022, no pet.) (mem. op.). "[S]uch findings 'provide assurance that the child and his family will be advised of the reasons for [removal from the home] and . . . be in a position to challenge those reasons on appeal.'" *Id.* (internal quotations omitted); *see also In re K.E.*, 316 S.W.3d 776, 781 (Tex. App.—Dallas 2010, no pet.) ("The reason for [section 54.04(f)'s] requirement is so the child will have notice of the trial court's reasons for the disposition, and the appellate court can determine whether the evidence supports those reasons."). "Merely reciting the statutory grounds for disposition is not sufficient to justify the trial court's ruling." *In re K.E.*, 316 S.W.3d at 781. However, reciting the statutory language and supplementing that language with additional findings may suffice to meet the requirements of section 54.04(f). *Id.* at 781–82 (holding requirements of 54.04(f) were satisfied by findings juvenile court made in exhibits to order).

In assessing whether section 54.04(f)'s requirement has been satisfied, "we may consider the entire order" and "read it as a whole." *In re J.P.R.*, 95 S.W.3d 729, 730 (Tex. App.—Amarillo 2003, no pet.) (internal citations omitted). "We need not simply restrict ourselves to perusing the items which the court denominated 'reasons.'" *Id.* Texas courts have considered a variety of findings in determining that an order satisfied section 54.04(f), such as findings identifying the offense or describing the crime involved, or findings that detention was warranted due to public safety concerns. *See, e.g., id.* at 730–31 (considering findings

14

regarding juvenile's criminal history, age, antisocial behavior, seriousness of offense, and need for secure setting in determining requirements of section 54.04(f) were met); *In re J.D.*, 773 S.W.2d 604, 606 (Tex. App.—Texarkana 1989, writ dism'd w.o.j.) (holding that identifying offense, concluding public safety warrants detention, stating rehabilitation was needed, describing nature of misconduct involved, and addressing stability of child and his home environment complied with statute); *In re J.T.H.*, 779 S.W.2d 954, 959 (Tex. App.—Austin 1989, no pet.) (holding court complied with statute when it concluded that offense was sufficiently serious to warrant commitment, mentioned circumstances surrounding commission of offense, concluded public protection was warranted, and described offense involved); *In re M.H.*, 662 S.W.2d 764, 767 (Tex. App.—Corpus Christi–Edinburg 1983, no writ) (holding court complied with statute when it alluded to child's history of delinquent conduct, prior use of alternative means of discipline, and child's age); *F.L.J. v. State*, 577 S.W.2d 532, 533 (Tex. Civ. App.—Waco 1979, no writ) (concluding court complied with statute when it stated child had violated specific penal law, had history of attacking others both verbally and physically, needed strict environment).

## B.    Analysis

J.H.M. asserts that the juvenile court's disposition order included a space for its reasons but that its order did not state the reasons. He argues that the court was

required to make additional findings in compliance with Texas Family Code section 54.04(f), but it failed to do so. We disagree.

Reading the order as a whole, the juvenile court included findings or reasons for its order. After making the necessary findings listed under section 54.04(i), the juvenile court found that J.H.M. committed the offense of murder and it made an affirmative finding of a deadly weapon, namely, a firearm. The court found "beyond a reasonable doubt that the allegations [against J.H.M.] are supported by the evidence." The juvenile court further found that J.H.M. was "in need of rehabilitation" and that disposition should be made "for [J.H.M.'s] protection and for the protection of the public." The juvenile court found that its "[d]isposition is in the best interest of [J.H.M.'s] health, safety, morals and education." The juvenile court's disposition order referenced and was accompanied by the stipulation of evidence that J.H.M. entered prior to the final disposition hearing in which he admitted the facts of the offense as alleged in the petition.

We further note that in Exhibit B attached to its order, the juvenile court found that reasonable efforts had been made to prevent or eliminate the need for J.H.M. to be removed from his home. Specifically, it noted that J.H.M. was previously referred to Sentinel-Electronic Monitoring, revision-mentorship program screening, MHMRA forensic services, Thinking for a Change, and individual counseling. In addition, the court noted that "no evidence of therapeutic

16

alternatives to TJJD to meet the needs of child[,] 18 y/o and no CTPO placements available[.]" *See In re K.E.*, 316 S.W.3d at 781–82 (holding requirements of section 54.04(f) were satisfied by findings juvenile court made in exhibits to order).

In sum, the juvenile court's order stated that J.H.M. was guilty of the offense of murder and it referenced the stipulation describing the circumstances surrounding the offense. The order stated that J.H.M. was in need of rehabilitation and that the interest of public safety would be served by his commitment to TJJD. The order is sufficient to comply with Texas Family Code section 54.04(f). *See In re J.P.R.*, 95 S.W.3d at 730–31; *In re K.E.*, 316 S.W.3d at 781 (reciting statutory language plus additional findings may be sufficient to satisfy section 54.04(f)).

We overrule J.H.M.'s first issue.

## Sufficiency of the Evidence

In his second issue, J.H.M. asserts that the juvenile court abused its discretion in committing him to TJJD. According to J.H.M., section 54.04 makes home probation the default disposition in a juvenile case, and to remove a child from his home, the State must put on evidence that satisfies the statutory criteria for an exception to home placement and commitment to TJJD. He asserts that the juvenile court improperly shifted the burden of proof to him. He further asserts that while the juvenile court's order committing him to TJJD made the required

17

findings under section 54.04(i), the evidence was legally and factually insufficient to support those findings.

## A. Standard of Review

A juvenile court has broad discretion to determine a suitable disposition for a juvenile who has been adjudicated as having engaged in delinquent behavior. *In re K.H.*, 682 S.W.3d 567, 576 (Tex. App.—Houston [1st Dist.] 2023, pet. denied); *see also In re W.J.P.*, No. 01-19-00988-CV, 2021 WL 2931437, at *2 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.) (mem. op.). An abuse of discretion occurs when the juvenile court acts unreasonably or arbitrarily, or without reference to any guiding rules or principles. *In re W.J.P.*, 2021 WL 2931437, at *2; *In re J.O.*, 247 S.W.3d 422, 424 (Tex. App.—Dallas 2008, no pet.). "Under an abuse-of-discretion standard, the legal and factual sufficiency of the evidence are relevant in evaluating whether the juvenile court abused its discretion." *In re W.J.P.*, 2021 WL 2931437, at *2.

When we review the legal sufficiency of the evidence supporting a juvenile court's disposition, we consider the evidence and inferences tending to support the juvenile court's findings and set aside the judgment only if there is no evidence of probative force to support the findings. *Id.* (citing *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.)). We consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would

18

support it, and anything more than a scintilla of evidence is legally sufficient to support the finding. *Id.* When we review the factual sufficiency of the evidence supporting a juvenile court's disposition, we consider and weigh all the evidence and set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be clearly unjust. *Id.* (citing *In re A.T.M.*, 281 S.W.3d 67, 71 (Tex. App.—El Paso 2008, no pet.)).

**B.  Analysis**

J.H.M. asserts that under Texas Family Code section 54.04(c), the statutory default is for the child to remain at home. He argues that because the State presented no evidence "to overcome the home probation mandate, the statute requires home probation."

Section 54.04(c) states: "No disposition placing the child on probation outside the child's home may be made under this section unless the court or jury finds that the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of the probation." TEX. FAM. CODE ANN. § 54.04(c). Section 54.04(i) states that "if the trial court places a child on probation outside the child's home or commits the child to [TJJD], the court shall include in its order" the three enumerated statutory findings. *See id.* § 54.04(i). There is nothing in the statute's plain language suggesting that home placement is the "statutory default" or that there is a "home

19

probation mandate." *See Campbell v. State*, 49 S.W.3d 874, 876 (Tex. Crim. App. 2001) ("[W]e look to the literal text of the statute for its meaning, and we give effect to the plain meaning unless the language is ambiguous or application of the statute's plain language would lead to an absurd result that the legislature could not possibly have intended."). Rather, these sections require that the fact finder make certain findings for disposition of the child outside of the home. That the findings are mandatory does not mean that home placement is.

According to J.H.M., the juvenile court shifted the burden of proof to him when, during oral rendition, the court observed that there was "no testimony regarding alternatives and treatment options in the community or juvenile probation placements outside the home that can provide therapeutic interventions." J.H.M. extrapolates from this comment that the court misconstrued the statute and improperly placed the burden of proof on him. This argument is unavailing. Although it is true that, while making its findings, the juvenile court observed the lack of testimony in this regard, this comment does not demonstrate that the court shifted the burden of proof to J.H.M.

J.H.M. next asserts that while the juvenile court's order committing him to TJJD made the required findings under section 54.04(i), the evidence was legally and factually insufficient to support the findings that it was in J.H.M.'s best interests to be committed to TJJD, *see* TEX. FAM. CODE ANN. § 54.04(i)(A), and

20

that reasonable efforts were made to prevent or eliminate his removal from the home and to make it possible for him to return home, *see id.* § 54.04(i)(B).

### 1. J.H.M.'s Best Interest

The evidence presented at the hearing showed that J.H.M. had two referrals: one for the offense of evading arrest/detention in 2021 and the current referral for the offense of murder, demonstrating an escalation in the nature of J.H.M.'s offenses. *In re W.J.P.*, 2021 WL 2931437, at *5–6 (holding best interest finding supported by evidence, inter alia, of escalating violent conduct and criminal conduct). After he turned eighteen years old, J.H.M. had an increasing number of supervision violations, some of which involved vehicles and one which occurred when J.H.M. visited a firearm store. In the December 2023 update to J.H.M.'s probation report, his probation officer stated: "It may be important to note [J.H.M.] continues to violate his home placement order" and "[J.H.M.] appears to have issues leaving home unsupervised in the afternoons for the last several months and he continues to do so after being admonished by this PAT Officer." The juvenile court also heard evidence that J.H.M. was transferred to a gang caseload due to his prior affiliation with the Crips. *See In re M.A.F.*, No. 14-03-00698-CV, 2004 WL 1661009, at *1 (Tex. App.—Houston [14th Dist.] July 27, 2004, no pet.) (mem. op.) (holding best interest finding supported by evidence including delinquent conduct offenses, curfew and probation violations, and prior affiliation with gang).

21

In support of his challenge to the juvenile court's best interest finding, J.H.M. points to Officer Rector's testimony that he and his mother were stable, responsive, and cooperative with probation. Rector also testified that although one of the conditions of J.H.M.'s probation was twenty-four hour supervision, he was left unsupervised at home on five or six occasions, and the previous probation officer had observed an increasing number of supervision violations, despite his admonishments to J.H.M. *See In re D.L.S.W.*, No. 04-18-00807-CV, 2019 WL 2518157, at *3 (Tex. App.—San Antonio June 19, 2019, no pet.) (mem. op.) (concluding evidence supported best interest finding where juvenile repeatedly violated her conditions of probation). J.H.M. also points to Detective Persad's testimony that Kelly killed the complainant. However, Detective Persad also testified that J.H.M. actively participated in the complainant's murder and could be seen on the surveillance videotaped recording shooting at a vehicle fleeing the scene.

Under the circumstances presented here, we cannot conclude that the juvenile court abused its discretion by concluding that it was in J.H.M.'s best interest to be placed outside his home or that the evidence supporting the finding is so weak or so contrary to the overwhelming weight of all the evidence that it should be set aside. *See* TEX. FAM. CODE ANN. § 54.04(i)(1)(A); *In re W.J.P.*, 2021 WL 2931437; *In re A.T.M.*, 281 S.W.3d at 71.

22

## 2. Reasonable Efforts

J.H.M. argues that the evidence was legally and factually insufficient to support the juvenile court's finding that reasonable efforts were made to prevent J.H.M. from being removed from his home and to make it possible for him to return home. *See* TEX. FAM. CODE ANN. § 54.04(i)(B). "However, 'reasonable efforts' does not mean that 'services' must first be explored." *In re W.J.P.*, 2021 WL 2931437, at *3 (citing *In re B.R.*, No. 02-19-00328-CV, 2020 WL 3969556, at *6 (Tex. App.—Fort Worth June 18, 2020, no pet.) (mem. op.)). This Court and others have held that "[a] trial court is not required to exhaust all possible alternatives before sending a juvenile to . . . TJJD." *Id.*; *see In re T.D.*, No. 12-19-00259-CV, 2020 WL 1528062, at *2 (Tex. App.—Tyler Mar. 31, 2020, no pet.) (mem. op.); *In re J.R.C.*, 236 S.W.3d 870, 875 (Tex. App.—Texarkana 2007, no pet.); *see also In re A.M.C.*, No. 04-11-00116-CV, 2011 WL 6090077, at *4 (Tex. App.—San Antonio Dec. 7, 2011, no pet.) (mem. op.) (holding juvenile court was not required to first exhaust probation and outside placements before ordering child committed, given severe pattern of delinquent conduct).

While the record shows that J.H.M. attended therapy, applied for jobs, and was making progress toward his GED, and J.H.M.'s mother testified that she would be able to supervise J.H.M., this does not mean the juvenile court's sentence was not supported by the evidence. The record shows that J.H.M. had a prior

23

referral in 2021 for evading arrest or detention, with a disposition noted as "Second Chance Begin." After he was placed in detention in January 2023 following the commission of the present offense of murder, J.H.M. had a write-up for ignoring staff and refusing to go to his room. The juvenile court also had evidence before it that J.H.M. later violated his home placement order by leaving home unsupervised numerous times over a period of several months, even after being admonished by his probation officer.

"Generally, a trial court does not abuse its discretion in rendering a commitment order when a delinquent juvenile has engaged in some type of violent activity that makes the juvenile potentially dangerous to the public." *In re W.J.P.*, 2021 WL 2931437, at * 3. Here, J.H.M. stipulated that he engaged in delinquent conduct by committing the offense of murder as alleged in the petition. He was adjudicated guilty of the offense of murder based on that evidence, and the juvenile court made an affirmative finding of a deadly weapon. During the final disposition hearing, the juvenile court considered all the evidence, which included details of the offense. The court noted that J.H.M. had committed acts clearly dangerous to human life when, during the commission of the offense, he discharged his firearm at a vehicle containing occupants who were leaving the scene.

Based on this evidence, we conclude that more than a scintilla of evidence supports the juvenile court's finding that reasonable efforts were made to prevent

or eliminate the need for J.H.M.'s removal from the home and to make it possible for him to return to his home. *See* TEX. FAM. CODE ANN. § 54.04(i)(1)(A); *In re W.J.P.*, 2021 WL 2931437, at *3–4; *In re A.T.M.*, 281 S.W.3d at 71. Further, based on our review of the record, we cannot conclude that the credible evidence supporting the juvenile court's finding is so weak or so contrary to the overwhelming weight of all the evidence as to be manifestly wrong. *See* TEX. FAM. CODE ANN. § 54.04(i)(1)(A); *In re W.J.P.*, 2021 WL 2931437, at *3–4; *In re A.T.M.*, 281 S.W.3d at 71.

We overrule J.H.M.'s second issue.

### Transfer to TDCJ

In his third issue, J.H.M. asserts that the juvenile court abused its discretion in transferring him from TJJD to TDCJ. He argues that because he was only ordered to be committed to TJJD but was not actually committed, the juvenile court lacked the authority to transfer him to prison. Appellant further asserts that the evidence was legally and factually insufficient to support his transfer to TDCJ.

### A. Standard of Review and Applicable Law

We apply the same abuse of discretion standard in reviewing a juvenile court's order to transfer a juvenile from TJJD to TDCJ. *See In re K.T.S.*, No. 14-23-00514-CV, 2024 WL 5162603, at *1 (Tex. App.—Houston [14th Dist.] Dec. 19, 2024, no pet.) (mem. op.); *In re J.M.O.*, 980 S.W.2d 811, 812–13 (Tex. App.—

San Antonio 1998, pet. denied). We may not reverse a juvenile court's decision merely because we disagree with that decision, so long as the court acted within its discretionary authority. *In re R.G.*, 994 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

When TJJD refers a juvenile who is serving a determinate sentence to a juvenile court for a possible transfer to TDCJ, the court must set a hearing. *See* TEX. FAM. CODE ANN. § 54.11(a). At the conclusion of the hearing, the court may either order the juvenile's return to TJJD or transfer the juvenile to TDCJ's custody for the completion of the sentence. *See id.* § 54.11(i). At the hearing on a request to transfer a juvenile to TDCJ, the court may consider: (i) the experiences and character of the juvenile before and after commitment to TJJD; (ii) the nature of the penal offense and the manner in which the offense was committed; (iii) the abilities of the juvenile to contribute to society; (iv) the protection of the victim of the offense or any member of the victim's family; (v) the recommendations of TJJD and the prosecuting attorney; and (vi) the best interests of the juvenile and any other relevant factors. *See* TEX. FAM. CODE ANN. § 54.11(k). Evidence of each listed factor is not required, and a juvenile court may assign different weights to the factors available for consideration. *See In re K.T.S.*, 2024 WL 5162603, at *1; *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied).

26

**B.     Propriety of Transfer**

Appellant asserts that the only statutory mechanism for transfer to TDCJ is if there is a proper TJJD commitment, and if the commitment itself fails, so does the transfer. Thus, because the juvenile court's order committing him to TJJD was never implemented, the court could not have transferred him from TJJD to TDCJ. We disagree.

Texas Family Code section 54.04 provides, in relevant part:

. . . .

(d) If the court or jury makes the finding specified in Subsection (c) allowing the court to make a disposition in the case:

. . . .

(3) if the court or jury found at the conclusion of the adjudication hearing that the child engaged in delinquent conduct that included a violation of a penal law listed in Section 53.045(a)[2] and if the petition was approved by the grand jury under Section 53.045, the court or jury may sentence the child to commitment in the Texas Juvenile Justice Department or a post-adjudication secure correctional facility under Section 54.04011(c)(2) with a possible transfer to the Texas Department of Criminal Justice for a term of:

(A) not more than 40 years if the conduct constitutes:

(i) a capital felony;

(ii) a felony of the first degree; or

---

[2]     Texas Penal Code section 19.02 (murder) is one of the penal laws listed under section 53.045. *See* TEX. FAM. CODE ANN. § 53.045(a)(1).

(iii) an aggravated controlled substance felony.

TEX. FAM. CODE ANN. § 54.04(d)(3).

Section 244.014 of the Human Resources Code, entitled "Referral of Determinate Sentence Offenders for Transfer," provides:

(a) After a child sentenced to commitment under Section 54.04(d)(3), 54.04(m), or 54.05(f), Family Code, becomes 16 years of age but before the child becomes 19 years of age, the department may refer the child to the juvenile court that entered the order of commitment for approval of the child's transfer to the Texas Department of Criminal Justice for confinement if:

(1) the child has not completed the sentence; and

(2) the child's conduct, regardless of whether the child was released under supervision under Section 245.051, indicates that the welfare of the community requires the transfer.

(a-1) After a child sentenced to commitment under Section 54.04(d)(3), 54.04(m), or 54.05(f), Family Code, becomes 16 years of age but before the child becomes 19 years of age, the department shall refer the child to the juvenile court that entered the order of commitment for approval of the child's transfer to the Texas Department of Criminal Justice for confinement if:

(1) the child has not completed the sentence;

(2) while the child was committed to the custody of the department, the child was subsequently adjudicated or convicted for conduct constituting a felony of the first or second degree or an offense punishable under Section 22.01(b)(1), Penal Code; and

(3) the child was at least 16 years of age at the time the conduct occurred.

TEX. HUM. RES. CODE ANN. § 244.014.

Read together, subsections (a) and (a-1) of section 244.014 address referrals of determinate sentence offenders for transfer after they have been *sentenced* to commitment under section 54.04(d)(3); there is no requirement that the juvenile have been physically placed at TJJD before a referral for transfer to TDCJ is permitted.

Additionally, we note that Texas Family Code section 54.11, which requires that the juvenile court set a time and place for a hearing on the possible transfer or release of a person committed under section 54.04(d)(3), states, in part:

. . . .

(b) The court shall notify the following of the time and place of the hearing:

(1) the person to be transferred or released under supervision;

(2) the parents of the person;

(3) *any legal custodian of the person, including the Texas Juvenile Justice Department* or a juvenile board or local juvenile probation department if the child is committed to a post-adjudication secure correctional facility;

(4) the office of the prosecuting attorney that represented the state in the juvenile delinquency proceedings;

(5) the victim of the offense that was included in the delinquent conduct that was a ground for the disposition, or a member of the victim's family; and

(6) any other person who has filed a written request with the court to be notified of a release hearing with respect to the person to be transferred or released under supervision.

TEX. FAM. CODE ANN. § 54.11 (emphasis added). Section 54.11(b) contemplates that the person who is the subject of the possible release or transfer may be in the custody of a department other than TJJD. *See id*. at § 54.11(b)(3).

## C.     Sufficiency of the Evidence

J.H.M. asserts that the evidence was legally and factually insufficient to support his transfer to TDCJ. He argues that the only evidence offered at the transfer hearing was Coy's testimony about the services available to J.H.M. if he was not transferred to TDCJ and that she could not speak to the services at TDCJ, and his mother's testimony.

At the transfer hearing, the juvenile court admitted into evidence TJJD's written hearing request, J.H.M.'s probation report, and his stipulation.

Coy oversees the sentence defender department at TJJD, which includes transfers to TDCJ. Coy testified that J.H.M. was not physically transferred to TJJD due to the very short time period between his commitment and when he turned nineteen. As a result of the short turnaround, there were no records of J.H.M's conduct in TJJD detention. Coy testified that if J.H.M. had been transferred to TJJD and there had been enough time, there would have been programs available to him.

Coy further testified that for offenders convicted of murder, TJJD had a Capital and Serious Violent Offender Treatment Program and the Power Source Treatment Program, a similar but less intensive program. Coy testified that if J.H.M. had used drugs, he might have qualified for TJJD"s substance abuse services. She testified that TJJD's programs were geared toward helping offenders who were involved with gangs but she was not aware of any specific program for offenders who are gang members. Coy testified that when an offender is committed to TJJD and he is eligible for transfer, she is typically able to make a recommendation about whether the sentence should be transferred. In this case, because J.H.M. was never actually transferred to TJJD, she was unable to make a recommendation.

Coy testified that TDCJ has programs both in the institutional division and for those on parole but she was not familiar with the specific programming. If J.H.M. were allowed to complete the remainder of his sentence on parole, Coy would recommend that he be placed on "super . . . intensive supervision" at TDCJ, which would be similar to house arrest; that he take anger management counseling; that he be gainfully employed; and that he participate in educational programming if he had not earned a high school diploma or obtained his GED. She testified that TDCJ does not have a program similar to the Capital Offender Program at TJJD, which lasts approximately six months and is very intensive. She testified that

although the programming at TDCJ is different than the programming at TJJD, both address the same identified risks.

At the transfer hearing, J.H.M.'s mother testified that she would be willing and able to help J.H.M. with his services if he were released on parole. She testified that she did not currently work so she would be able to supervise J.H.M.

In its dispositional order of transfer to TDCJ, the juvenile court found that (1) J.H.M. was born on May 27, 2005 and the transfer hearing was held prior to the sixtieth day after the date the court received the referral; (2) J.H.M. was detained in the Harris County Juvenile Detention Center for 112 days; (3) at the time of his transfer hearing, J.H.M. was in the custody of TJJD after being committed there on May 2, 2024; (4) J.H.M. "is still in need of rehabilitation and the welfare of the community requires the transfer"; (5) J.H.M. "displayed a deadly weapon to wit: firearm"; and (6) it was in J.H.M.'s best interest as well as the public at large that he be transferred to TDCJ "in accordance with Section 54.11, Texas Family Code, to serve the remainder of his 8-year Determinate Sentence."

In sum, the juvenile court (1) determined on March 5, 2024 that J.H.M. committed the offense of murder, (2) assessed J.H.M.'s disposition on May 2, 2024 at commitment to TJJD for eight years, and (3) ordered J.H.M.'s transfer to TDCJ on May 23, 2024. The court was entitled to consider that the nature of J.H.M.'s offense alone warranted his transfer. The record showed that J.H.M., along with

two other assailants, chased down and killed the complainant, with whom J.H.M. had had no issues. The record further showed that J.H.M. shot at occupants of a car as they fled the scene. The juvenile court could have concluded that the "welfare of the community require[d] the transfer." *See In re R.P.*, No. 14-24-00845-CV, 2026 WL 60733, at *4 (Tex. App.—Houston [14th Dist.] Jan. 8, 2026, no pet.) (mem. op.) (noting that juvenile court may consider seriousness of offender's violent offense when deciding to transfer juvenile to TDCJ); *In re S.S.C.*, No. 14-23-00078-CV, 2024 WL 1326092, at *4 (Tex. App.—Houston [14th Dist.] Mar. 28, 2024, no pet.) (mem. op.).[3]

Additionally, the juvenile court had evidence before it that once J.H.M. turned eighteen, he continued violating the terms of his probation by leaving the house unsupervised while knowing that a transfer to TDCJ was possible and despite admonishments by his probation officer. The juvenile court could have reasonably determined that these considerations weighed toward confining J.H.M.

---

[3]     In closing arguments at the transfer hearing, the prosecutor stated:

> I think the real crux of the issue in this case is that there has not been time for [J.H.M.] to receive services that would ensure community safety. And it's threefold. First and foremost, [J.H.M.] was only sentenced about two weeks ago, maybe three weeks ago, I'm sorry. And in that time because it – he wasn't able to be transferred to TJJD, there were no services that were able to be provided to [J.H.M.]. The services that would be provided to [J.H.M.] if he were granted parole are insufficient to overcome what would be necessary or to rehabilitate or to ensure community safety.

in a TDCJ correctional facility, where he could still receive programming and work toward rehabilitation. *See In re J.D.P.*, 149 S.W.3d 790, 792–96 (Tex. App.—Fort Worth 2004, no pet.) (affirming juvenile court's decision to transfer juvenile to TDCJ when juvenile committed violent murder and exhibited extremely poor behavior while in custody); *In re R.G.*, 994 S.W.2d 309, 312–13 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (finding no abuse of discretion in juvenile court's decision to transfer juvenile to TDCJ to continue serving his forty-year determinate sentence when juvenile committed violent murder and had behavioral incidents while in custody).

That Coy testified about the services available to J.H.M. if he were not transferred to TDCJ, but could not speak to the specific programming available at TDCJ, are factors the juvenile court could consider. It was the juvenile court's prerogative to decide the weight to assign these factors. *See In re K.T.S.*, 2024 WL 5162603, at *1 (noting juvenile court may assign different weights to factors available for consideration). "[A] trial court does not abuse its discretion in transferring a juvenile to TDCJ even when evidence suggests that the possibility of more specialized treatment would be obtained by a juvenile's return to" TJJD. *In re J.B.C.*, No. 2-07-431-CV, 2008 WL 4531701, at *3 (Tex. App.—Fort Worth Oct. 9, 2008, no pet.) (mem. op.); *see In re K.T.S.*, 2024 WL 5162603, at *4 (rejecting argument that trial court abused its discretion in transferring juvenile

34

who was participating in programs at TJJD and maintaining positive behavioral history). Based on the seriousness of the offense, J.H.M.'s prior gang affiliation, and his numerous probation violations, the State recommended that the remainder of J.H.M.'s sentence be transferred to TDCJ. *See In re K.T.S.*, 2024 WL 5162603, at *1 (noting State's recommendation is one factor juvenile court may consider in deciding whether to transfer juvenile to TDCJ).

In sum, considering the entirety of the record and deferring to the juvenile court's prerogative to weigh the evidence, we cannot conclude that the juvenile court abused its discretion in deciding to transfer J.H.M. to TDCJ to continue serving his eight-year determinate sentence for the offense of murder. *See* TEX. FAM. CODE ANN. § 54.11(k); *In re K.T.S.*, 2024 WL 5162603, at *1.

We overrule J.H.M.'s third issue.

## Conclusion

We affirm the disposition order and the transfer order of the juvenile court.

Kristin M. Guiney
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.

35